**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Dessie Mitcheson, Jaime Edmondson Longoria, and Jesse Golden, as assignees of Country Club, Inc.,<br><br>and<br><br>Cielo Jean Gibson and Jessica Hinton, as assignees of Nepal, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Clear Blue Specialty Insurance Company,<br><br>Defendant. | Civil Action No. 4:24-cv-07255-JD<br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendant Clear Blue Specialty Insurance Company's ("Clear Blue") Motion for Judgment on the Pleadings (DE 30) pursuant to Federal Rule of Civil Procedure 12(c). Plaintiffs responded in opposition (DE 31), Clear Blue replied (DE 32), and the parties submitted supplemental authorities (DE 40; DE 42).

This insurance coverage dispute concerns Clear Blue's refusal to defend and indemnify two nightclub operators in underlying lawsuits alleging the unauthorized use of professional models' images in advertising. Clear Blue contends that the claims fall within the policies' Exhibitions and Related Marketing Exclusion (the "ERM Exclusion"). For the reasons below, the Court **GRANTS IN PART and DENIES IN PART** Clear Blue's motion.

## I. BACKGROUND

Plaintiffs are five professional models who brought separate actions against two South Carolina nightclub operators for allegedly misappropriating their images and likenesses in commercial advertising. (DE 1 ¶¶ 1–4.) Plaintiffs Dessie Mitcheson, Jaime Edmondson Longoria, and Jesse Golden asserted claims against Country Club, Inc. ("Country Club"), which operated Masters Gentlemen's Club in Myrtle Beach, South Carolina. Plaintiffs Cielo Jean Gibson and Jessica Hinton asserted claims against Nepal, Inc. ("Nepal"), which operated Club Lust in Greenville, South Carolina. (*Id.* ¶¶ 2–3.)

The underlying complaints alleged that the nightclubs used Plaintiffs' images without authorization to advertise their establishments and create the false impression that Plaintiffs worked at, endorsed, or otherwise were affiliated with the clubs. (DE 30-2 ¶¶ 1–2, 25; DE 30-3 ¶¶ 1–2, 15–19.) The underlying actions asserted claims under the Lanham Act and various state-law theories, including invasion of privacy, right of publicity, defamation, and related causes of action. (DE 30-2 at 16–26; DE 30-3 at 9–18.)

Country Club and Nepal were insured under separate commercial general liability policies issued by Clear Blue. The policies contain materially identical provisions concerning personal and advertising injury and the exclusion at issue. (DE 1 ¶¶ 24–36; DE 30-4 at 36, 48; DE 30-5 at 30, 46.)

After receiving the underlying lawsuits, the insureds sought defense and indemnification from Clear Blue. Clear Blue denied coverage. (DE 1 ¶¶ 5–7.) The

Country Club action ultimately resulted in a judgment against Country Club, and the Nepal action was resolved through settlement. The insureds subsequently assigned their rights against Clear Blue to the present Plaintiffs. (*Id.* ¶¶ 8–10.)

Plaintiffs commenced this action on December 12, 2024, seeking declaratory relief and damages arising from Clear Blue's alleged breach of its insurance obligations. (DE 1.) Clear Blue answered the Complaint on August 27, 2025. (DE 20.) On June 18, 2025, the Court denied Clear Blue's motion to sever the Country Club and Nepal claims, finding that the claims presented substantially overlapping factual and legal questions. (DE 16 at 4–7.)

Clear Blue contends that the underlying advertising injuries are excluded under the ERM Exclusion and separately argues that the Nepal publications are outside the pertinent policy period or subject to a prior-publication exclusion. (DE 30-1 at 14–23; DE 32 at 3–10.) Plaintiffs dispute Clear Blue's construction of the ERM Exclusion, principally contending that professional models are not necessarily "celebrities," that routine nightclub advertising is not advertising for "promotional events," and that Clear Blue's interpretation renders the Coverage B grant illusory. (DE 31 at 7–20.)

## II. LEGAL STANDARD

A Rule 12(c) motion is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in favor of the nonmoving party. *Id.* at 406.

The Court may consider documents incorporated into or integral to the pleadings whose authenticity is not disputed. *Goines v. Valley Community Services Board*, 822 F.3d 159, 166–69 (4th Cir. 2016). Here, the insurance policies and underlying complaints are integral to Plaintiffs' claims, and their authenticity is not disputed. (DE 1 ¶¶ 1–10, 24–36; DE 31 at 2.) Accordingly, the Court may consider those materials without converting the motion into one for summary judgment.

Because jurisdiction rests on diversity of citizenship, the Court applies South Carolina substantive law. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). The parties agree that South Carolina law governs the policies. (DE 30-1 at 12–14; DE 31 at 5–7.) Under South Carolina law, insurance policies are construed according to their plain, ordinary meaning, and clear exclusions are enforced as written. *B.L.G. Enterprises, Inc. v. First Financial Insurance Co.*, 514 S.E.2d 327, 330 (S.C. 1999). The insurer bears the burden of establishing the applicability of an exclusion. *Owners Insurance Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005).

An insurer must defend an underlying action when its allegations create a possibility of covered liability. *City of Hartsville v. South Carolina Municipal Insurance & Risk Financing Fund*, 677 S.E.2d 574, 578–79 (S.C. 2009). Where an action includes covered and uncovered claims, the insurer's duty to defend extends to the entire action. *Town of Duncan v. State Budget & Control Board*, 482 S.E.2d 768, 774 (S.C. 1997). The duty to defend is broader than the duty to indemnify, and facts outside the underlying complaint known to the insurer may also bear on that

obligation. *City of Hartsville*, 677 S.E.2d at 578–79; *USAA Property & Casualty Insurance Co. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008).

## III. DISCUSSION

### A. The Policies' Coverage Grant and ERM Exclusion

The policies provide coverage for certain "personal and advertising injury," including injury arising from "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." (DE 30-4 at 48; DE 30-5 at 46–48.) Clear Blue does not dispute that the underlying allegations implicate the initial coverage grant. (DE 30-1 at 2, 14; DE 31 at 3.) The dispute instead concerns the ERM Exclusion's effect.

The exclusion is set forth in an endorsement titled "Exclusion – Libel, Slander, Disparagement, Privacy Violation and Advertising Injury Arising Out of Exhibitions and Related Marketing." (DE 30-4 at 36; DE 30-5 at 30.) The endorsement excludes specified personal and advertising injuries, including privacy violations, when the activities "arise out of or are part of 'exhibitions and related marketing.'" (*Id.*) The endorsement defines "exhibitions and related marketing" to include:

> The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, [including such activities in] social media [and other specified media].

(DE 30-4 at 36; DE 30-5 at 30.) The definition also expressly includes "[m]erchandising, advertising or publicity programs or material for the operations and material described" in the preceding provisions. (*Id.*)

Clear Blue maintains that the underlying claims fall within this exclusion because the nightclubs used Plaintiffs' images to advertise promotional events through social media. Plaintiffs disagree, arguing primarily that they are not necessarily "celebrities," that the advertisements promoted ordinary nightclub business rather than qualifying promotional events, and that Clear Blue's interpretation would render the advertising injury coverage illusory. (DE 31 at 7–20.)

The promotional-events language provides a sufficient ground to resolve the Nepal-assignee claims. It does not, on this Rule 12(c) record, establish that every potentially covered allegation in the broader Country Club action is excluded.

**B. Application of the ERM Exclusion to the Underlying Advertisements**

The policies do not separately define "promotional event." The Court therefore considers the ordinary meaning of that phrase in the context of the exclusion and the policies as a whole. In ordinary usage, an "event" describes an identifiable happening or occasion; "promotional" describes an effort to attract interest in a business, service, or offering. The phrase "promotional events," read together, therefore includes distinct advertised occasions undertaken to attract customers. It does not necessarily include routine business operations or an ordinary invitation to visit. *See Acosta v. Clear Blue Specialty Ins. Co.*, No. CV-24-03681-PHX-DJH, 2026 WL 2093910, at *4–5 (D. Ariz. July 21, 2026); *Clear Blue Specialty Insurance Co. v. 05 Petete, Inc.*, No. 26-1891, 2026 WL 2196263, at *3–4 (E.D. Pa. July 29, 2026).

This construction gives operative meaning to "event" while recognizing that a nightclub may hold events promoting its own business. Plaintiffs' view that a

qualifying event must promote a different enterprise—for example, a book launch or charitable benefit—finds no such limitation in the policy text. (DE 31 at 16–17.) Conversely, Clear Blue cannot sustain its position merely by labeling all online nightclub advertising a "publicity program." (DE 30-1 at 15–16; DE 32 at 6–10.) The advertisement must relate to the subject matter specified by the ERM Exclusion.

The exhibits illustrate why the distinction matters: some advertise discrete holiday, sporting, or themed occasions; another simply invites patrons to the club for its ordinary offerings. The Court addresses those materials separately. The parties' dispute cannot be resolved by treating these different advertisements as interchangeable.

**1. Country Club Advertisements**

Mitcheson's image appeared in advertisements stating that Masters would open on Christmas Eve and Christmas Day. (DE 30-2 at 50–52, Ex. C.) The material identifies holiday dates and uses holiday imagery, but it emphasizes the club's opening and operating hours. Whether this is a discrete holiday promotion, as Clear Blue contends, or simply a notice of ordinary business availability is not free from doubt at the pleadings stage. The Court need not resolve that question because the Country Club underlying complaint contains a more direct example of non-event advertising.

Longoria's image appeared in advertisements associated with a specifically identified Super Bowl promotion and related offerings. (DE 30-2 at 67–75, Ex. F.) The Super Bowl is an identifiable sporting occasion, and the posts are directed to patron

attendance in connection with it; these advertisements fall within the ordinary meaning of the promotional-events language.

Golden's image appeared in advertisements for "Black Wednesday," the Wednesday preceding Thanksgiving. (DE 30-2 at 77–80, Ex. G.) The specified holiday-related promotion is also a discrete event rather than undifferentiated nightclub operations.

Those materials strengthen Clear Blue's position that the advertisements involve the present Country Club assignees. But the coverage inquiry cannot stop with those three plaintiffs: the insurer's asserted lack of a duty to defend concerns Country Club's entire underlying suit, which included additional models and claims. (DE 30-2 at 2–3, 11–14, 17–24.)

Of particular importance, the underlying Country Club complaint alleged that Masters misappropriated Lucy Pinder's likeness and published it on its social media accounts, creating a false impression of employment, endorsement, or affiliation. (DE 30-2 ¶¶ 51–53, at 11–12.) Exhibit H includes a post using her image with the slogan "Because BOOBS." The accompanying message asks, "What are YOU doing tonight?" and invites visitors to see the club's women and enjoy drinks. (DE 30-2 at 88–89, Ex. H.) Nothing in that advertisement identifies a particular holiday, performance, organized promotion, or other discrete event. On its face, it appears to promote ordinary nightclub attendance.

The Pinder advertisements reproduced in Exhibit H bear August 2016 publication dates, preceding the Clear Blue policies issued to Country Club, which

provided successive coverage beginning June 17, 2019, and ending June 17, 2021. (DE 30-2 at 88–89; DE 30-4 at 3; DE 30-1 at 7–8.) The underlying complaint, however, does not limit the alleged misconduct to those original publications. It further alleges that Country Club republished the models' images and likenesses on multiple occasions, through different media, after their initial publication and continuing through the filing of the complaint in October 2021. (DE 30-2 ¶ 101, at 19–20.) The complaint also alleges that the republications were altered to reach new audiences or promote different products. (*Id.* ¶ 102.)

These allegations are significant to both the policy-period requirement and the prior-publication exclusion. In *Pennsylvania National Mutual Casualty Insurance Co. v. Beach Mart, Inc.*, 932 F.3d 268, 275–77 (4th Cir. 2019), the Fourth Circuit reversed judgment on the pleadings where the underlying allegations permitted an inference that subsequent publications occurred during the policy period and differed in substance from earlier publications. Although *Beach Mart* applied North Carolina insurance law, its analysis illustrates why the absence of precise publication dates or complete details concerning subsequent publications does not necessarily establish the applicability of a prior-publication exclusion as a matter of law.

Here, the alleged period of republication encompasses the Clear Blue policy periods, and the complaint alleges changes to the subsequent advertising materials. The pleadings do not identify a particular altered publication of Pinder's image during those periods, nor do they establish that any later publication differed materially from the original offending content. But those uncertainties cannot be

resolved conclusively in Clear Blue's favor on the present Rule 12(c) record. Clear Blue has not shown that the potentially covered republication allegations necessarily concern only pre-policy offenses or substantially identical material excluded from coverage.

Accordingly, the Court cannot conclude as a matter of law that the underlying Country Club action presented no possibility of covered liability. This determination does not establish that a covered republication occurred, that the prior-publication exclusion is inapplicable, or that Clear Blue ultimately owed a defense or indemnity. It holds only that the presently cognizable pleadings do not establish Clear Blue's entitlement to judgment on those questions.

**2. Nepal Advertisements**

The Nepal exhibits present a materially clearer connection between the challenged publications and distinct promotional events. Gibson's image appeared in advertisements for Club Lust's "Annual Turkey Ball," expressly identifying a Thanksgiving-themed event with specified dates and associated offerings. (DE 30-3 at 21–23, Ex. A.) Those publications involve more than an invitation to patronize the club on an ordinary night. Hinton's image appeared in "Heroes & Villains" advertisements identifying a superhero-themed occasion, including a specified Saturday and associated drink specials. (DE 30-3 at 25–26, Ex. B.) The posts advertise a particular themed event.

Both sets of Nepal advertisements are tied to identified occasions rather than an ongoing weekly price schedule or the usual operation of a nightclub. Plaintiffs'

contention that a nightclub party can never qualify as a promotional event would read an unwarranted limitation into the exclusion. (DE 31 at 16–17.)

The underlying Nepal complaint connects the alleged injury to those publications. (DE 30-3 ¶¶ 16–19, 22–26, 28–29, at 4–7.) The promotional-events provision of the ERM Exclusion therefore applies to the Nepal claims on the pleaded facts. (DE 30-5 at 30.) Accordingly, Clear Blue has established that the identified Nepal injuries fall within the exclusion; it has not made the same showing concerning the Country Club underlying suit as a whole.

**C. The Persuasive Authorities Support an Advertisement-Specific Inquiry**

The courts considering the same or substantially similar ERM Exclusion have divided over how it applies to nightclub advertising. Their decisions are not controlling interpretations of South Carolina law, but their attention to the content of particular advertisements is useful here. In *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 84 F.4th 274, 284–86 (5th Cir. 2023), the Fifth Circuit held that a materially similar exclusion did not render Coverage B illusory. That decision is persuasive on the policy-structure issue; it does not eliminate the need to determine whether the allegedly offending advertisements involve subject matter covered by the exclusion.

In *Sampedro v. Clear Blue Specialty Ins. Co.*, No. 8:25-cv-00012-JLB-TGW, 2026 WL 1291919, at *3 (M.D. Fla. May 12, 2026), the court granted judgment on the pleadings for advertising associated with identified themed nightclub events. It also recognized that ordinary nightclub activities might not fall within the exclusion.

Likewise, *Nobriga v. Clear Blue Specialty Ins. Co.*, No. 3:24-cv-01980-SVN, 2026 WL 1998727, at *5–7 (D. Conn. July 10, 2026), enforced the exclusion for holiday and themed promotions.

*Acosta v. Clear Blue Specialty Ins. Co.*, No. CV-24-03681-PHX-DJH, 2026 WL 2093910, at *4–5 (D. Ariz. July 21, 2026), distinguished recurring specials—such as "Champagne Saturdays" and "2 por 1 Martes"—from discrete holiday events. It held that a named discount or routine offering does not necessarily become a "promotional event." That reasoning supports the distinction between Nepal's "Annual Turkey Ball" and the generic Pinder promotion in the Country Club exhibits.

Similarly, *Clear Blue Specialty Insurance Co. v. 05 Petete, Inc.*, No. 26-1891, 2026 WL 2196263, at *3–4 (E.D. Pa. July 29, 2026), concluded that advertisements for ordinary recurring nightclub operations did not unambiguously qualify as "promotional events." As the court observed, an event often connotes a discrete occurrence, not continual day-to-day operations. That analysis highlights the difficulty in treating the Country Club Pinder advertisement as categorically excluded. By contrast, the identified Nepal advertisements refer to specific Thanksgiving and superhero-themed occasions. Their direct connection to discrete events permits application of the ERM Exclusion without construing it as a blanket exclusion for all nightclub marketing.

The Court recognizes that *05 Petete* found uncertainty in the policy phrase under Pennsylvania law. But the Court need not decide whether every marginal use of the phrase is ambiguous; it applies the text to the distinctive events shown in the

Nepal exhibits and concludes only that Clear Blue has not carried its Rule 12(c) burden as to the Country Club underlying suit.

The distinction is consistent with South Carolina's requirement to construe the whole policy according to its ordinary meaning while preserving the insurer's burden to establish a challenged exclusion. *See B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999); *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005). *Mayes v. Clear Blue Specialty Insurance Co.*, No. CV-24-03674-PHX-SPL, 2026 WL 2916756, at *5–6 (D. Ariz. Sept. 28, 2026), denied a similar Rule 12(c) motion where Clear Blue had not adequately analyzed the individual advertisements. That case reinforces the need for the advertisement-specific examination undertaken here; it does not bar judgment as to Nepal's expressly themed event materials.

Thus, the contrary authorities do not preclude partial judgment as to Nepal, but they caution against the unqualified inference that every advertising use in the broader Country Club action is excluded. The Court does not apply the ERM Exclusion merely because an image was published through social media.

### D. Celebrity-Image Allegations Do Not Resolve the Remaining Coverage Questions

Clear Blue alternatively invokes the "celebrity image or likeness" portion of the ERM Exclusion. (DE 30-1 at 15–18; DE 32 at 5–7.) Plaintiffs respond that recognition as a professional model is not necessarily celebrity status and that the policy does not define "celebrity." (DE 31 at 7–15.) Although some allegations describe significant public recognition—including Pinder's modeling and television career—the Court need not decide the undefined term's application to every model as a matter

of law. *See Acosta*, 2026 WL 2093910, at *5–6; *Nobriga*, 2026 WL 1998727, at *5. The Nepal allegations are excluded on the independent promotional-events ground. The Country Club question cannot be resolved categorically on this alternative ground at the pleadings stage.

**E. The ERM Exclusion Is Not Illusory as Applied to the Nepal Claims**

Plaintiffs argue that the ERM Exclusion effectively withdraws the advertising-injury coverage otherwise promised by the policies. (DE 31 at 17–20.) Clear Blue responds that the exclusion is limited to designated subject matter and leaves meaningful coverage under Coverage B. (DE 30-1 at 17–21; DE 32 at 8–10.) South Carolina requires policies and endorsements to be read together, enforcing clear exclusions without rewriting the contract. *See B.L.G. Enters., Inc.*, 514 S.E.2d at 330–31. The State also recognizes that a construction making coverage merely illusory may be rejected. *See S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 730 S.E.2d 862, 867 (S.C. 2012).

Here, the exclusion applies to specified Coverage B offenses when tied to defined activities. It leaves intact coverage for personal injuries including false arrest, malicious prosecution, and wrongful eviction, as well as potentially covered publication injuries unrelated to the enumerated subject matter. (DE 30-4 at 36, 48, 57; DE 30-5 at 30, 46, 55.)

The Fifth Circuit rejected an illusory-coverage challenge to materially similar language because "Personal and Advertising Injury" was treated as one defined category and the exclusion left significant protection intact. *See Princeton Excess &*

*Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 84 F.4th 274, 285–86 (5th Cir. 2023). The Court finds that reasoning persuasive as applied to the endorsement's use for genuinely event-specific advertising. The exclusion restricts particular risks without nullifying the entire coverage promise. An exclusion necessarily withdraws some protection otherwise furnished by an insuring agreement. That fact does not, by itself, make the policy illusory. But the Court does not accept an interpretation under which every online advertisement qualifies as an excluded "promotional event"; that interpretation would diminish the role of the subject-matter limitation and would be difficult to reconcile with the policy as a whole.

The Court therefore enforces the ERM Exclusion with respect to Nepal's identified promotional events, while reserving application to the materially different allegations concerning Country Club. For those reasons, Clear Blue is entitled to judgment on the pleadings concerning the Nepal-assignee claims based on this exclusion; it has not established entitlement to judgment on the broader Country Club duty-to-defend claim.

**F. The Nepal Policy-Period and Prior-Publication Arguments**

Clear Blue separately argues that some Nepal materials predate coverage and that Hinton's later advertisement republishes the same offending material. (DE 30-1 at 21–23; DE 32 at 3–5.) Plaintiffs did not directly address this alternative argument in their response. The Court nevertheless rests its Nepal ruling on the ERM Exclusion and does not treat the failure to respond as independently dispositive.

The representative Nepal policy began August 28, 2017. (DE 30-5 at 2.) Gibson's identified posts from 2015 and 2016 predate that inception, while Hinton's materials include a January 2017 post and a March 2018 advertisement. (DE 30-3 at 21–23, 25–26.)

Whether the Hinton materials constitute substantially identical prior and later publications invokes a distinct analysis under the policy's prior-publication provision. *See Beach Mart*, 932 F.3d at 274–79. That analysis is unnecessary to the Nepal disposition because its advertisements concern excluded promotional events. The Court does not decide the independent Nepal timing and republication defenses or whether those defenses apply to Country Club. The dates of the earlier Country Club exhibits and its allegations of later republication underscore why that distinct issue should not be decided without focused analysis. (DE 30-2 ¶¶ 100–102, at 19–20; DE 30-2 at 88–89; DE 30-4 at 3.)

**G. Duties to Defend and Indemnify; Scope of Disposition**

Because the duty to defend is broader than the duty to indemnify, the Court analyzes the insureds separately. *See City of Hartsville*, 677 S.E.2d at 578–79. The parties' assignments and the outcomes of the underlying suits do not themselves expand the terms of the coverage Clear Blue agreed to provide. They also do not eliminate any independent contractual obligation arising from a wrongful refusal to defend. For Nepal, the underlying pleading attributes the injuries claimed by Gibson and Hinton to the identified Thanksgiving and superhero-themed promotional advertisements. (DE 30-3 ¶¶ 16–19, 22–26, at 4–7; DE 30-3 at 21–26.) The ERM

Exclusion applies to those injuries. Thus, Clear Blue owed no defense or indemnity with respect to the Nepal underlying action on the claims presented here, and the Nepal assignees cannot recover the related judgment, settlement, defense expenses, or other contract damages through the assigned policy rights.

For Country Club, the underlying action included plaintiffs other than the present assignees. The Pinder allegations and Exhibit H prevent the Court from determining that all potentially covered injuries in the underlying action arose from qualifying promotional events. (DE 30-2 ¶¶ 51–53, 100–102, at 11–12, 19–20; DE 30-2 at 88–89.) The earlier dates shown on Exhibit H raise a separate policy-period question but do not resolve the pleaded assertion of later republication at the Rule 12(c) stage. (DE 30-1 at 7–8; DE 30-4 at 3.)

In assessing Clear Blue's duty to defend Country Club, the Court must consider the underlying action as a whole, rather than limiting its inquiry to the claims asserted by the three models who subsequently received assignments of Country Club's rights. Under South Carolina law, an insurer may be obligated to defend an entire action when the underlying complaint includes both potentially covered and excluded claims. *See Town of Duncan v. State Budget & Control Board*, 482 S.E.2d 768, 774 (S.C. 1997); *Agape Senior Primary Care, Inc. v. Evanston Insurance Co.*, 304 F. Supp. 3d 492, 497, 499–500 (D.S.C. 2018). Accordingly, Clear Blue must account for the potentially covered allegations concerning the other models in the underlying Country Club action. On the present Rule 12(c) record, Clear Blue has not established that those allegations fall outside coverage as a matter of law. The Court therefore

cannot conclude that Clear Blue owed no duty to defend the underlying action. This determination does not resolve the scope of the assigned rights, the ultimate existence of coverage, or Plaintiffs' entitlement to particular damages.

The Court does not determine that Clear Blue actually owed such a defense, or that the Country Club assignees may recover any particular judgment amount, fee, expense, or indemnity payment. The Court holds only that Clear Blue's arguments and the presently cognizable pleadings do not dispose of the Country Club claims as a matter of law.

Those issues may be addressed through an appropriately supported later motion, including a more focused analysis of the timing and nature of any republication and the actual basis of the underlying judgment, if relevant to indemnity. The Court will not resolve those disputed or undeveloped issues by converting this Rule 12(c) motion into summary judgment without the procedure Rule 12(d) requires.

Because the ERM Exclusion is dispositive as to Nepal, judgment on the pleadings is entered against the Nepal assignees' coverage and assigned contractual claims. The motion is denied as to the Country Club assignees, whose claims remain pending.

## IV. CONCLUSION

For these reasons, Clear Blue's Motion for Judgment on the Pleadings (DE 30) is GRANTED IN PART as to Gibson and Hinton, assignees of Nepal, and DENIED as to Mitcheson, Longoria, and Golden, assignees of Country Club.

The Court DECLARES that the ERM Exclusion bars coverage for the claims in the Nepal underlying action and that Clear Blue owed Nepal no duty to defend or indemnify those claims. The Nepal assignees' claims are DISMISSED WITH PREJUDICE.

The Country Club assignees' claims remain pending. The Court makes no final determination concerning those claims, any defense or indemnity obligation, damages, or the policy-period and prior-publication defenses.

Because the action remains pending, this is not a final judgment. *See* Fed. R. Civ. P. 54(b). The Clerk shall not close the action.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
November 16, 2026